## STATE v. FIRST BANK STOCK CORPORATION.[1]

No. 30,836.

June 19, 1936.

*Frank J. Williams* and *Edward J. Shannon,* Assistant County Attorneys, for the State.

*Junell, Driscoll, Fletcher, Dorsey & Barker* and *A. McC. Washburn,* for respondent.

[1]Reported in 267 N. W. 519, 269 N. W. 37.

STONE, JUSTICE.

First Bank Stock Corporation, to which we shall refer as defendant, prevailed below in this proceeding to enforce delinquent money and credits taxes for 1934. The state appeals from an order denying its alternative motion for amended findings or a new trial.

Defendant is a Delaware corporation admitted to this state, with its principal office here. It owns all or a majority of the stock in about 84 national and state banks in the Ninth Federal Reserve District. These are its subsidiaries, managed by it from its principal office in Minneapolis. Their stocks are not held by defendant merely for investment. They are not dealt in or traded, but were acquired and are owned for the purpose of giving defendant plenary control over the banks. The subsidiaries are colloquially and politically characterized as "chain banks." They are managed, supervised, and periodically examined by defendant. It selects all their officers and dictates all their policies. Another subsidiary corporation or two are mentioned in evidence and argument, but there is nothing about them to change the essential facts concerning defendant's ownership and use of its bank stocks.

Whatever may be said of its properties separately considered, defendant's business is a very important economic unit, which, as to headquarters and management, is localized in Minnesota, wherein also are many banks, both state and national, which it controls through stock ownership. Its corporate seal is kept at its Minneapolis office. All meetings of its stockholders, board of directors, and executive committee are held in Minneapolis or St. Paul. The certificates for its stocks in subsidiary banks are all kept at the Minneapolis office. Defendant regularly returns for taxation all its taxable money and credits other than the stocks in state banks of other states. As to the latter, it denies that Minnesota has the power to tax them or itself as owner of them.

Presently involved are the stocks of six Montana and two North Dakota state banks. (The case is unembarrassed by any problem peculiar to the taxation of shares in national banks.) Defendant owns, as it does in most cases, all their stock, except qualifying shares in the ownership of the few directors and officers necessarily

resident at the domicile of each bank. Even such shares are held by the owners subject to an option in defendant to repurchase at will.

Each bank in Montana and North Dakota, together with its tangible property, is subject to taxation, and is taxed, by the domiciliary state. So also are their stock shares, even when held by nonresidents.[2] Defendant's position, sustained below, is that again to tax the shares in the possession and ownership of defendant in Minnesota, or to tax it as the owner thereof, would be not only double taxation, but also a denial of due process of law in violation of art. 1, § 7, of the constitution of Minnesota, and the due process clause of § 1 of the fourteenth amendment of the constitution of the United States.

We are now dealing with a property, and not an excise, tax. Hicken v. Board of Education, 153 Minn. 120, 189 N. W. 709. In this state "money and credits" are taxed under 1 Mason Minn. St. 1927, §§ 2337 to 2349, at a special and low rate of three mills on each dollar of fair cash value and are exempt from other local taxation. Under § 2348, they become a part of the personal property tax of the owner with a resulting liability *in personam*. Needless to say, it was not intended that any money or credits (not within the express exceptions of the statute)[3] owned by inhabitants of this state should escape.

---

[2]In Montana the tax on both state banks and their shares is imposed and its collection provided for by Revised Codes Montana, 1927 Supp. § 2067; and in North Dakota, under Compiled Laws North Dakota, 1913 (& 1925 Supp.), §§ 2115(1) to 2117. The shares as such as well as the corporation are taxed, and, as to the tax on the stock, the corporation is made liable for payment. Minnesota taxes in similar fashion "the stock of every bank and mortgage loan company" organized under its laws. 1 Mason Minn. St. 1927, §§ 2026-1 to 2029.

[3]One of those exceptions is of "moneyed capital in the hands of individual citizens of this state coming into competition with the business of national banks." 1 Mason Minn. St. 1927, § 2337. Whether the case is affected by that exception we have no occasion to and do not consider. It was added by amendment in 1923 (L. 1923, c. 102) and so was not in effect in 1921 and 1922, money and credits taxes for which years were the subject of decision in State v. First Nat. Bank, 164 Minn. 235, 204 N. W. 874, 205 N. W. 375.

Defendant in its corporate person is within its jurisdiction and subject to the state's taxing power. The argument against local taxation is put upon the nature of the property and the fact that it is subject to taxation in other states. In order properly to appraise that argument, the nature of the involved property, corporate shares, must not be overlooked. That they are personal property and, as such, subject to tax laws has long been settled law.

■ Shares are "mere contract rights, or, in technical language, choses in action." 1 Morawetz, Private Corporations (2 ed.) § 225. Hawley v. City of Malden, 232 U. S. 1, 34 S. Ct. 201, 58 L. ed. 477, 482, Ann. Cas. 1916C, 842. The distinction must be observed between the shares in the abstract which are intangible, "and the transferable certificates which represent these rights." The latter "are something more. They are constantly treated as tangible property in commercial transactions, and, by reason of their negotiable character, are in fact tangible property of great value, just as negotiable notes and bills are." 1 Morawetz, Private Corporations (2 ed.) § 226.

■ If the shares in question are not taxable to defendant locally, they would not be so in the hands of another owner even though he were an individual rather than a corporation. If, in respect to his ownership of foreign bank shares, the owner cannot be subjected to taxation here, he might enjoy a similar immunity from contributing to the maintenance of government and its services in Minnesota in respect to his shares in all foreign corporations. The jurisdiction of Minnesota to tax at all is challenged, and the supporting argument must rest, finally, not so much upon the fact of taxation in other states as on their supposed exclusive power to tax, whether exercised or not, and in the supposed lack of power in Minnesota to tax at all.

Defendant's allegation of denial of due process is made untenable by Hawley v. City of Malden, 232 U. S. 1, 34 S. Ct. 201, 58 L. ed. 477, Ann. Cas. 1916C, 842. The question there was whether the taxation of shares of stock, owned by a resident of Massachusetts, in a foreign corporation, which did no business and had no property

in that state, was a denial of due process. It was decided in the negative.

Even at the time of that decision, the power it sustained had been exercised without question by most, if 'not all, of the states from their earliest days. Its constitutionality, as observed by the supreme court, had been sustained by the repeated and numerous state decisions cited. The distinction was drawn between the property of the shareholders in their shares and that of the corporation itself. The former "may be separately taxed." The numerous decisions, which were followed, sustained the power and were ruled by "the view that shares are personal property and, having no situs elsewhere, are taxable by the state of the owner's domicile, whether the corporations be foreign or domestic." The argument that the shares were "taxable solely in the state of incorporation" was rejected and the power of the state of the owner's domicile to tax them sustained.

Upon the question of situs, we shall have more to say later, but in Hawley v. City of Malden, 232 U. S. 1, 11, the court said:

"When we are dealing with the intangible interest of the shareholder, there is manifestly no question of physical situs, so far as this distinct property right is concerned, and the jurisdiction to tax it is not dependent upon the location of the lands and chattels of the corporation."

Further, in respect to corporate shares, the court held [232 U. S. 12] that, as choses in action, such shares, "in the absence of legislation prescribing a different rule * * * are appropriately related to the person of the owner, and, being held by him at his domicile, constitute property with respect to which he is under obligation to contribute to the support of the government whose protection he enjoys."

Upon the authority of Hawley v. City of Malden, and deciding the question strictly as one of federal constitutional law, we hold that the taxation in Minnesota, as attempted under our money and credits tax law, of the involved stocks in the Montana and North Dakota banking corporations, is not a denial of due process. Bristol

v. Washington County, 177 U. S. 133, 20 S. Ct. 585, 44 L. ed. 701; City of New Orleans v. Stempel, 175 U. S. 309, 20 S. Ct. 110, 44 L. ed. 174; Metropolitan L. Ins. Co. v. City of New Orleans, 205 U. S. 395, 27 S. Ct. 499, 51 L. ed. 853.

■ The argument against application of the rule of Hawley v. City of Malden, 232 U. S. 1, is that "only one state can constitutionally impose a property tax upon intangibles, and as to shares of state banks, such a tax may be imposed only by the state of incorporation, and not by the state of domicile [of the owner of the shares] or business situs." That proposition is put upon the authority of the more recent inheritance tax cases (overruling Blackstone v. Miller, 188 U. S. 189, 23 S. Ct. 277, 47 L. ed. 439, and the other decisions approving it), to-wit: Farmers L. & T. Co. v. Minnesota, 280 U. S. 204, 50 S. Ct. 98, 74 L. ed. 371, 65 A. L. R. 1000; Baldwin v. Missouri, 281 U. S. 586, 50 S. Ct. 436, 74 L. ed. 1056, 72 A. L. R. 1303; Beidler v. South Carolina Tax Comm. 282 U. S. 1, 51 S. Ct. 54, 75 L. ed. 131; First Nat. Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 76 L. ed. 313, 77 A. L. R. 1401.

Inheritance taxes are excises and not levies on property. They are fixed on an event, the transfer which takes place on, and by reason of, death. The conclusion is simply that, inasmuch as the tax is not upon the property transferred, but rather and only an excise upon the event which transfers it, the only state having the power to make the levy is the one, and there can be but one, wherein the event, the transfer on death of the owner, takes place.

Even as to inheritance and succession taxes, the recent and controlling cases are explicitly limited so as not to apply where the property, the transfer of which is sought to be taxed, has an actual or "business situs" elsewhere than in the state of the owner's domicile. In Farmers L. & T. Co. v. Minnesota [280 U. S. 208], first declaring the new rule, it was emphasized that none of the property, municipal bonds, "had any connection with business carried on by or for the decedent in Minnesota."

If stocks can ever have an actual or "business situs" in a state other than that of the corporation itself, there is such a situs of defendant's shares in Minnesota. "It is difficult to conceive how

property could be more completely localized." See DeGanay v. Lederer, 250 U. S. 376, 382, 39 S. Ct. 524, 526, 63 L. ed. 1042, where the "localized" securities were in the possession and management of an agent in the United States for a nonresident alien owner. We stress again the real distinction between the incorporeal rights evidenced by the stock certificates and the stock certificates themselves, the former being intangible and the latter tangible and dealt with as such. Compare First Trust Co. v. Matheson, 187 Minn. 468, 246 N. W. 1, 87 A. L. R. 478, holding that bonds payable to bearer are so far tangibles as to be properly subject to an action *quasi in rem* here. Under the rule of that case, and the others therein cited, particularly Hamilton v. Brown, 161 U. S. 256, 16 S. Ct. 585, 40 L. ed. 691, there seems to be no question that, if the stocks in question were owned by an individual resident of Minnesota, and he should die here, intestate and without heirs, Minnesota jurisdiction would be the only one capable of adjudging the escheat of the certificates and the property rights thereby evidenced.

There is another and important feature of this case, not present in the inheritance tax cases. It is that the stocks of the eight Montana and North Dakota state banks upon which this state seeks to levy a money and credits tax have, by reason of their ownership and use by defendant, with the stocks in 76 other banks, an importance in use and value, local in nature, which they would not possess if the stock in each of defendant's subsidiary banks were considered in isolation as a unit by itself. The stocks in defendant's subsidiaries, themselves numerous and scattered widely through the Ninth Federal Reserve District, have been amalgamated into a super banking and economic unit in defendant's ownership and control. Thereby there has arisen a new power over the banking activities and interests of a large and important area. Whatever the increment of value resulting therefrom, it is undeniable that together they make a new unit of highly important and valuable property, integrated and with a situs here or nowhere.

The maxim *mobilia sequuntur personam* must apply to such a property or it has become a mere museum piece of ancient law. If Minnesota cannot tax the whole, it will not be taxed elsewhere

except to the extent that fractions of it are separately taxed in the states wherein defendant's subsidiaries are incorporated. That process cannot touch the larger and new unit of business and value owned and operated by defendant in Minnesota. The local owner of the increment of worth added by the amalgamation will by so much escape taxation if we sustain the argument for defendant. That would not be double taxation, which defendant opposes, but an escape from taxation, which no one advocates, however much he wants it. Inherent in any theory calculated to permit large values to escape their just share of the burden of government is its own refutation.

The established local business situs of defendant's bank stocks and their unitary use here in a new integer of business and property furnish all the basis needed to support the challenged tax, for which we hold defendant liable. Like State v. Pittsburgh Plate Glass Co. 147 Minn. 339, 180 N. W. 108, the recent case of Wheeling Steel Corp. v. Fox, 298 U. S. 193, 211, 56 S. Ct. 773, 777, 80 L. ed. 809, applies to a concrete issue the idea of a "business situs" of intangibles of a corporation outside its home state. Sustained was the claim of West Virginia "that the accounts receivable and bank deposits * * * had acquired a taxable situs" in that state, although the corporation was chartered in Delaware. "The constitutional authority of West Virginia to tax," said the court, "cannot be denied upon the ground that they [the intangibles in question] are taxable solely in Delaware. The question is whether they should be deemed to be localized in West Virginia." The decisive answer was in the affirmative. Its factual basis, summarized, was that the credits sought to be taxed in West Virginia had been created and were managed and liquidated there as part of the business of the owner localized there.

The bank stocks presently considered were not created here, but they are owned here. More important is the fact that they are here an integrated part, and the main one, of a distinctly localized unit of business, property and value.

Exploring further defendant's argument anent double taxation, one answer is that there is no constitutional prohibition of duplicate

taxation. There is a difference between twice taxing the same event which can happen in but one state, and twice taxing the same property, once in respect to an interest, or quality, or susceptibility, especially related to one jurisdiction, and again in respect to another as clearly related to the second taxing power.

The present trend of our law is against multiple state taxation of intangibles. If "the employment of the due process clause of the fourteenth amendment to eliminate the multi-state taxation of intangible personalty" (Rottschaefer, "State Jurisdiction to Impose Taxes," 42 Yale L. Jour. 305, 307) is to continue and evolve into a symmetrical plan barring such taxation, there must be a reëxamination, and probably an end, of the present practice of states taxing the shares of their corporations in the ownership of nonresidents. Such levies, extraterritorial in practical effect, are an anomaly if not in fact *ultra vires*.

The bonds of a corporation, owned and held by nonresidents at their domiciles in other states, are beyond the taxing power of the chartering state. Cleveland, Painesville & Ashtabula R. Co. v. Pennsylvania, 82 U. S. 300, 21 L. ed. 179. The location of the taxable interest in a chose in action should not be made to depend on any mere fiction or phrasing of an idea. The stubborn and determinative actuality is that the "right has no locality independent of the party in whom it resides." He, and he alone, may give it a situs for taxation other than his own. Bristol v. Washington County, 177 U. S. 133, 20 S. Ct. 585, 44 L. ed. 701; Metropolitan L. Ins. Co. v. City of New Orleans, 205 U. S. 395, 27 S. Ct. 499, 51 L. ed. 853.

Stock shares no less than corporate bonds are choses in action attended by obligations of the corporation to the owners of them. Stock certificates evidence those duties as truly as do bonds the promise to pay principal and interest. In both, the corporation is the obligor, the holders the obligees. As to corporate bonds, the chartering state cannot tax them when owned beyond its own boundaries. It cannot give them a situs for taxation apart from the domicile of the owner.

How are stock and stock certificates so different that state power may do for and with them what it cannot do for and with bonds? If it cannot by a mere legislative assertion localize the bonds for taxation, upon what theory—under what formula—may it localize the stock for the same purpose? Even if realism be frankly discarded and fictions avowedly made the media of reasoning, it is apparent that any allowable fiction that fits either bonds or stocks is equally apt for the other.

The power of the domiciliary state to subject nonresident owners of corporate stock to taxation rests upon its supposed power (sustained in Corry v. City of Baltimore, 196 U. S. 466, 25 S. Ct. 297, 49 L. ed. 556), in creating the corporation, to fix "the situs" of *all* its stock, wherever owned, for purposes of taxation. If it may so establish one situs, why may it not be made the only one?

If the domiciliary states have the power, by taxing the shares in their corporations, to exclude all taxation thereof by other states wherein the owners reside, why may they not do so by exempting such shares from all taxation? Suppose, for example, that Montana and North Dakota, instead of taxing bank stocks, taxed only the corporations as such and expressly had declared that the shares should be exempt. It is a question of the reach of sovereign power, and, whatever sovereign power may do by affirmation, it should be able to accomplish by equally significant negation.

If the home state may fix a situs for property taxation, why may it not do the same for excises? Why may it not declare that it shall be the only state to tax the transfer of stock on the death of even nonresident owners? That it cannot do so now seems to be established. It has never been suggested that the home state could declare itself the only one to take by escheat the shares of nonresident owners dying intestate and without heirs. Equally beyond the scope of legal thought is the idea that a state may so monopolize the situs of stocks as to declare that, wherever owned, they will descend, on the death of the owner, under its own law and no other.

The domiciliary state of a corporation, of course, may tax it as a corporation. The company and its local property of all sorts are taxable in the home state. But, if that state may tax also the

special property of nonresidents in their shares, it is by so much taxing property and persons beyond its jurisdiction. In such case the home state is in fact taxing beyond its boundaries unless the foreign holders of the shares have no property therein which they can carry with them anywhere, for any purpose, beyond the territory of that state.

But, it may be rejoined, a state upon enfranchising a corporation may condition as it wishes all corporate activities and all use and ownership of its shares. So it may if there are no limits to its power. Let it be supposed there are none as to the corporation itself, which is made a legal person by and of the state of incorporation. But what of shareholders in other states? The domiciliary state cannot tax them *in personam,* in respect to and on their separate interests, unless it may so condition the issue of shares by the corporation. It may condition issue, transfer, and ownership of shares within constitutional limits. But, is it not going beyond its jurisdiction by imposing a condition which is intended to operate, and in practice can operate, only on subjects, property, and its owners, in other states?

How far may a state condition a corporation it enfranchises and the stock and stockholders therein? It may limit powers and confine their exercise to its own domain. But if it permits its corporation to go into other states, corporate action in the latter will be governed by local law. The original, domiciliary limitation of its power is congenital and inescapable. But in other respects a corporation does escape the laws of its home state whenever it becomes domiciled in another. For the home state by the act of incorporation to attempt to permit its corporations to go into others and there to deny their jurisdiction, as by resisting otherwise appropriate taxation, would be plainly *ultra vires.*

Suppose, for example, a state says to its corporations: "You must pay a tax on all your tangible property wherever owned; subject to that condition, go into another state and do business there." Suppose the corporation does so and acquires tangible property in another state and keeps it there, its actual physical situs and use there and there only. It cannot escape taxation there.

Must it pay also at home? Obviously not. Either a state must keep its corporations at home, or, permitting them to roam into other states, must acknowledge for the laws of the latter their full reach to and effect upon all proper subjects. If the state of incorporation cannot so condition its corporations going into other states, how may it impose similar conditions upon stockholders and their property beyond its own jurisdiction?

The recent cases prevent multi-state inheritance taxation, not because of its multiplication, but because only of the territorial limitation which prevents one state from taxing an event, such as a property transfer, which transpires beyond its own boundaries and within those, and by virtue of the laws, of another state. In that new light, the principle of Corry v. City of Baltimore, 196 U. S. 466, may need reëxamination. It is not, to say the least, a symmetrical system of preventing multiple state taxation of the same economic interest, which bars such assessment of a transfer of stock and yet permits it as to the stock itself. The asymmetry results from the inclusion in the tax structure of permission to a state, in organizing a corporation, to resort to an expedient of condition or regulation which in fact projects its own jurisdiction to property and persons beyond its boundaries.

The power of the domiciliary state to tax the shares of a corporation, even when owned by nonresidents, is based upon its authority "to determine the basis of organization and the liabilities of shareholders." Illustrative is the "dominant power" of congress in the exercise of which as to national banks it "has fixed the places at which alone shares in those institutions may be taxed." Hawley v. City of Malden, 232 U. S. 1, 12.

There is a vital difference between congressional power as to national banks, "dominant" in all the states and competent to fix for all the states the status of any national bank (and its shares) in all of them, and the power of a state, which can reach into no other as to anything.

The argument that state taxation of foreign-held shares rests upon contract also falls short of its mark. Liberty of contract does not permit a resident of Minnesota to bargain himself or his prop-

erty into exemption from Minnesota jurisdiction. Such a contract would be void as against public policy. So also would be one between the state itself and a nonresident expressly subjecting to taxation here property having a situs at the owner's domicile and subject to taxation there. How, then, can a state, if it attempts to do so even by a corporate charter, effectually contract that it may tax persons or property beyond its jurisdiction? Certainly any contract so attempting to vest in a state an extraterritorial taxing power would fall under the condemnation of illegality.

It all comes back to a question of the reach of a state's sovereign power of taxation. If it may fix for taxation, as decided in Corry v. City of Baltimore, 196 U. S. 466, the situs of all stock in all its corporations, there is an end to the matter. The question stands so decided. . It is not for us to determine otherwise. What we have said on the subject is intended only to stress some additional obstacles in the way of denying Minnesota's power to tax defendant's stock in the banks of other states.

State banks, we do not forget, are not wanderers from their home states. They are not authorized to do business elsewhere. But their stocks are not and cannot well be kept at home. That they cannot be taxed there when owned by nonresidents we do not attempt to decide. Neither do we suggest that as matter of present law they cannot, or should not, be subjected to taxation both in the chartering state and also in that of the nonresident owner. We conclude only that when owned and used in Minnesota, as defendant owns and uses those now in question, they are subject to taxation by Minnesota.

The order under review must be reversed with directions to amend the findings of fact and conclusions of law in accordance with the views expressed in this decision and to order judgment for the state.

So ordered.

UPON APPLICATION FOR REARGUMENT.

On October 9, 1936, the following opinion was filed:

STONE, JUSTICE.

The petition of respondent, First Bank Stock Corporation, for a rehearing is denied. But in order to insure that certain unfounded fears thereby expressed shall not be shared by others, we append the following.

While we noted for what it was worth the distinction between stock certificates and the incorporeal property of which they are the evidence, we did not mean even to suggest that two distinct properties are being taxed—that the domiciliary states, Montana and North Dakota, are taxing the shares while Minnesota was attempting to reach only the certificates. We agree with counsel that "double taxation is not thus to be explained away." Our view is that if Montana and North Dakota may and do tax the shares in question, there is double taxation of the same property or interest if Minnesota also has the power to and does tax the shares.

Nor did we mean to suggest that the respondent, through the plenary character of its control of its subsidiary banks and the use it makes thereof, is going "beyond that which is proper on the part of a majority stockholder." We do regard as unimportant the fact that much of the supervision formerly exercised by respondent directly has been taken over by its wholly owned subsidiary the "First Service Corporation."

It may not be necessary to add more to make plain our realization that the judgment of this court does not settle the matter. Deliberately we have tried to throw the question into bold relief. It may be necessary, as counsel suggest, to "overrule" either Corry v. City of Baltimore, 196 U. S. 466, 25 S. Ct. 297, 49 L. ed. 556, or Hawley v. City of Malden, 232 U. S. 1, 34 S. Ct. 201, 58 L. ed. 477, Ann. Cas. 1916C, 842. But the choice between them, if one must be made, is for the tribunal whose judgments are supreme in the field of federal constitutional law. There also must be answered "the question expressly left undecided" in Hawley v. City of Malden, 232 U. S. 1, 34 S. Ct. 201, 58 L. ed. 477, Ann. Cas. 1916C, 842, whether the chartering state may monopolize the right to tax the shares of its corporations wherever owned, by declaring that its domain shall be the exclusive situs for such taxation.