# H. H. IRVINE v. G. HOWARD SPAETH.[1]

June 20, 1941.

No. 32,813.

*Fletcher, Dorsey, Barker, Colman & Barber, Leland W. Scott, W. C. Gilbert, John W. Windhorst,* and *Leonard H. Murray,* for appellant.

*J. A. A. Burnquist,* Attorney General, and *Philip F. Sherman,* Assistant Attorney General, for respondent.

STONE, JUSTICE.

In this action to recover an alleged overpayment of state income tax, plaintiff, a resident and citizen of the state, claims that a portion of the dividends received by him as stockholder in First Bank Stock Corporation is exempt.

First Bank Stock Corporation is a Delaware corporation, qualified to transact business in this state under local statutes. It is

[1]Reported in 299 N. W. 204.

a holding company, colloquially characterized as the owner of a system of "chain banks." It owns from 80 to 98 per cent of the stock of 32 state and national banks situated in Minnesota, North and South Dakota, and Montana. (It owns 63.84 per cent of the stock in a 33rd bank.) The nature of its business, local and otherwise, is fully stated in State v. First Bank Stock Corp. 197 Minn. 544, 267 N. W. 519, 269 N. W. 37, affirmed, 301 U. S. 234, 57 S. Ct. 677, 81 L. ed. 1061, 113 A. L. R. 228. Therein the corporation was held subject to local taxation in respect to its stocks of banks chartered in other states.

This action involves the tax on part of plaintiff's income for the year 1937. Included in his return was the amount of all dividends received from the First Bank Stock Corporation. His present claim is that, so far as those dividends passed on to him income from dividends declared by national banks, they were exempt from state income tax.

Plaintiff's case is based on R. S. § 5219, as amended, 12 USCA, § 548, which in part reads:

"The several States may (1) tax said shares [of national banking associations], or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) according to or measured by their net income, provided the following conditions are complied with:"

As federal instrumentalities, national banks are subject to no inherent power in the states to tax them. The banks, their property, and shares of their capital stock are subject to state taxation only as congress permits. Des Moines Nat. Bank v. Fairweather, 263 U. S. 103, 44 S. Ct. 23, 68 L. ed. 191, and cases cited. A tax beyond that permission is void. Owensboro Nat. Bank v. Owensboro, 173 U. S. 664, 19 S. Ct. 537, 43 L. ed. 850.

The congressional permission is in § 5219. As the first of the "following conditions" referred to in the above quotation therefrom, it declares that "the imposition by any State of any one of

the above four forms of taxation shall be in lieu of the others, except as hereinafter provided in subdivision (c) of this clause."[2] Minnesota did not, in 1937, tax national banks "according to or measured by their net income."[3] Instead, it taxed their shares. 1 Mason Minn. St. 1927, §§ 2026-1 to 2026-4. Under 3 Mason Minn. St. 1940 Supp. § 2394-5(a), national and state banks are exempt from operation of the state income tax.

Thus, the question is whether the tax in question is an "other" tax on the "shares of national banking associations." Plaintiff's contention is that "because Minnesota cannot impose a tax on dividends paid by national banks it cannot impose a tax on dividends paid by First Bank Stock Corporation out of national bank dividends." That, in sum, is the case for plaintiff. We deny it for these reasons.

The dividends in question are not those of national banks. They are those of a holding company owning and controlling a large system of banks, state and national. It does not hold the stock of the subsidiary banks for investment in the ordinary sense. Characterize it as one may, the First Bank Stock Corporation is an entity distinct from that of the banks or any of them which it controls and manages. State v. First Bank Stock Corp. 197 Minn. 544, 267 N. W. 519, 269 N. W. 37, affirmed, 301 U. S. 234, 57 S. Ct. 677, 81 L. ed. 1061, 113 A. L. R. 228. Whatever may be its history or current practice, such a holding company is designed to reap advantages of profit and economic power not to be anticipated, or at least not so easily obtained, if its subsidiary banks remained independent of it and of each other.

Dividends received by First Bank Stock Corporation, from whatever source, go into its cash on hand, which is a locally owned and

---

[2]Where a state taxes the income of individuals and also taxes national banking associations "according to or measured by their net income," subdivision (c) permits, on certain conditions, the inclusion in individual income of dividends received from national banks.

[3]By L. 1941, c. 18, Minnesota elected to tax national banks "according to or measured by their net income" under method (4) specified in § 5219.

locally managed fund. It may be reinvested in any manner within the corporate powers of the owner. It is therefore the subject of an economic unit wholly distinguishable from that of the subsidiary banks, the dividends of which come to it. In short, the First Bank Stock Corporation is a complete "nonconductor" of the qualified immunity from state taxation enjoyed by national banks. See Van Allen v. The Assessors, 3 Wall. 573, 18 L. ed. 229.

Our conclusion is supported by Des Moines Nat. Bank v. Fairweather, 263 U. S. 103, 112, 44 S. Ct. 23, 26, 68 L. ed. 191. There a state tax on national bank shares was sustained against a contention that, in computing their value, the bank's investments in tax-exempt United States securities and stock in a federal reserve bank were wrongly included in the assets of the bank. Rejecting that contention, the court said that it—

"confuses the shares, which are the property of the stockholders, with the corporate assets, which are the property of the bank. It is quite true that the States may not tax such securities, but equally true that they may tax the shares in a corporation to their owners, the stockholders, although the corporate assets consist largely of such securities, and that in assessing the shares it is not necessary to deduct what is invested in the securities. The difference turns on the distinction between the corporate assets and the shares,—the one belonging to the corporation as an artificial entity and the other to the stockholders."

In like manner, plaintiff's contentions confuse his income from the shares of First Bank Stock Corporation with the latter's income from the dividends of national banks.

Appellant stresses Bank of California v. Richardson, 248 U. S. 476, 39 S. Ct. 165, 63 L. ed. 372, and two cases following it. Schuylkill Trust Co. v. Pennsylvania, 296 U. S. 113, 56 S. Ct. 31, 80 L. ed. 91; Schuylkill Trust Co. v. Pennsylvania, 302 U. S. 506, 58 S. Ct. 295, 82 L. ed. 392. In the Bank of California case, the bank owned shares in D. O. Mills National Bank. California, in levying an *ad valorem* tax on the shares of national banks, assessed the Bank

of California as owner of the D. O. Mills shares. It was held that in computing the value of the shares of the Bank of California, in taxing the owners thereof, the value of the D. O. Mills shares could not be validly included.

On the facts before it, the court rejected the nonconductor idea, saying [248 U. S. 485, 39 S. Ct. 167, 63 L. ed. 372]:

"It is undoubted that the statute [§ 5219] from the purely legal point of view, with the object of protecting the federal corporate agencies which it created from state burdens and securing the continued existence of such agencies despite the changing incidents of stock ownership, treated the banking corporations and their stockholders as different. But it is also undoubted that the statute for the purpose of preserving the state power of taxation, considering the subject from the point of view of ultimate beneficial interest, treated the stock interest, that is, the stockholder, and the bank as one and subject to one taxation by the methods which it provided."

The tax was held to violate "the one power to tax by the one prescribed method conferred by the statute and which was the sole measure of the state authority." Considered objectionable was the "double burden resulting from the taxation of the same value twice." Of this "value" (that of the shares of the national bank), the corporation, Bank of California, was not a nonconductor.[4] The result ran counter to "an implicit restriction in the congressional assent" found in § 5219. Des Moines Nat. Bank v. Fairweather, 263 U. S. 103, 115, 44 S. Ct. 23, 27, 68 L. ed. 191.

Neither the Bank of California case nor those following it are decisive. The reason lies in the differing nature and economic incidence of the taxes imposed. Perhaps the assets of a corporation may be so reflected in the value of its shares as to be considered taxed when the shares are taxed. But here, when dividends of national banks become earnings of this local corporation, they lose

---

[4]Professor Rottschaefer says this case achieved a "curious and doubtful result" based on reasoning "most turgid." 7 Minn. L. Rev. 375.

their character as national bank dividends. They are converted into working capital of a private enterprise, the use of which is subject only to restrictions of local law and the corporate powers of the local owner.

Further, the basic principles governing construction of § 5219 and controlling decision in the California case (and those following it) are rooted in the implied, reciprocal immunity of the agencies of state and federal governments from taxation by the other. The trend of decision is restricting that immunity. In Graves v. New York ex rel. O'Keefe, 306 U. S. 466, 483, 59 S. Ct. 595, 600, 83 L. ed. 927, 120 A. L. R. 1466, it was said that it should be "narrowly restricted" because, as is the case here, "the expansion of the immunity of the one government correspondingly curtails the sovereign power of the other to tax, and where that immunity is invoked by the private citizen it tends to operate for his benefit at the expense of the taxing government and without corresponding benefit to the government in whose name the immunity is claimed." In the same decision [306 U. S. 493], Mr. Justice Butler, dissenting, predicted that "presently marked for destruction is the doctrine of reciprocal immunity that by recent decisions here has been so much impaired."

Important is the recognition by § 5219 of the difference between property and income taxes. That section, as amended since the Bank of California case,[5] does not nullify that decision. But where a state taxes national banks "according to or measured by their net income," subdivision (c) permits a nondiscriminatory income tax upon the recipient of dividends from national bank shares.[6] For income taxation, the bank and its shareholders are treated by congress as distinct entities.

---

[5]Section 5219, at the time of decision of the Bank of California case, permitted only a tax on the shares of national banks as personal property of the owner. Principal restriction on such tax was that it be nondiscriminatory, *i. e.,* "that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State."

[6]See footnote 2.

Furthermore, we cannot believe that congress, if it constitutionally could do so, intended to extend the implied restrictions of § 5219 to such a tax as that now challenged. As stated in Tradesmens Nat. Bank v. Oklahoma Tax Comm. 309 U. S. 560, 567, 60 S. Ct. 688, 692, 84 L. ed. 947, one of the most recent pronouncements on the problem:

"A consideration of the course of judicial decision on R. S. 5219 and its predecessors can leave no doubt that the various restrictions it places on the permitted methods of taxation are designed to prohibit only those systems of state taxation which discriminate in practical operation against national banking associations or their shareholders as a class."[7]

Our state income tax is nondiscriminatory. There is not, and could not be, claim to the contrary.

The exemptions of § 5219 are rooted in the implied, reciprocal immunity of agencies of one government from taxation by the other. Section 5219 having no express provisions as to the income here in question, exemption, if any, must rest on implication. In such case, "it is in order to consider the nature and effect of the alleged burden, and if it appears that there is no ground for implying a constitutional immunity, there is equally a want of any ground for assuming any purpose on the part of Congress to create an immunity." Graves v. New York ex rel. O'Keefe, 306 U. S. 466, 480, 59 S. Ct. 595, 598, 83 L. ed. 927, 120 A. L. R. 1466.

In the effect of this state income tax on plaintiff, in respect to his First Bank Stock Corporation dividends, there is no burden upon the federal government or its instrumentality, the national bank. It is not a tax on the property of any bank or its shares. Nor is it payable out of bank funds. It is a tax *in personam* on an individual computed on his income. 3 Mason Minn. St. 1940

---

[7]Section 5219 was materially amended in 1926. 44 St. 223, 12 USCA, § 548. As unamended, its obvious purpose was to prevent discrimination. See footnote 5. From this statement of the court, it appears that existence or nonexistence of discrimination remains as the principal inquiry in considering a tax such as the one here in question.

Supp. §§ 2394-3 and 2394-48. It does not apply *in rem* against his income or the source thereof. Long gone is the time when a tax upon income must be considered, legally or economically, a tax on its source. See Graves v. New York ex rel. O'Keefe, 306 U. S. 466, 59 S. Ct. 595, 83 L. ed. 927, 120 A. L. R. 1466, and cases cited.

As said in Helvering v. Gerhardt, 304 U. S. 405, 421, 58 S. Ct. 969, 976, 82 L. ed. 1427, the imposition of an income tax on the direct recipient of government funds imposes a "burden" on government only "to some extent which economists are not able to measure." This burden results from the theoretical disadvantage of the governmental instrumentality having to pay a higher price for the services rendered by the taxed individual, whether they be personal services or financial, as here. But the only substantial and measurable burden is absorbed by the taxpayer. Willcuts v. Bunn, 282 U. S. 216, 51 S. Ct. 125, 75 L. ed. 304, 71 A. L. R. 1260; Metcalf & Eddy v. Mitchell, 269 U. S. 514, 46 S. Ct. 172, 70 L. ed. 384.

Such negligible burden as may result is but the inescapable incident of the operation in the same domain of two governments, each possessed of the taxing power. In considering the constitutionality of such burden, it must be weighed against the obvious and now recognized obligation of all persons, even the officers and employes of both governments, to share in the necessary burdens imposed by both through taxation. Helvering v. Gerhardt, 304 U. S. 405, 58 S. Ct. 969, 82 L. ed. 1427; Graves v. New York ex rel. O'Keefe, 306 U. S. 466, 59 S. Ct. 595, 83 L. ed. 927, 120 A. L. R. 1466. The recipient of dividends from a holding company, which are derived in part from dividends of national banks, is, too plainly for debate, in no more fortunate position of immunity from income taxation than the officers and employes of state and national governments.

Affirmed.