# DES MOINES NATIONAL BANK *v.* FAIR-WEATHER, MAYOR; ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 17.   Argued October 3, 1923.—Decided November 12, 1923.

1. National banks, their property, or the shares of their capital stock, cannot be taxed by the States otherwise than in conformity with the terms and restrictions imposed by Congress in assenting to such taxation.  P. 106.

2. Under § 5219, Rev. Stats., (prior to the amendment of March 4, 1923,) national banks and their property were free from state taxation, except on their real property and on shares held by them in other national banks; and all shares in such banks were taxable to their owners, the stockholders, subject to the restrictions that they be not taxed higher than other moneyed capital, employed in competition with such banks, and that the taxing of shares of nonresidents of the State be at the place of the bank's location. P. 107.

3. Where under the state law the shares in a national bank are assessed to the shareholders, and the property of the bank, other than real estate, is expressly exempt, valuation of the shares by the capital, surplus, and undivided earnings, less the real estate, and requiring the bank, primarily, to pay the tax on the shares on behalf of the shareholders, (while allowing it ample means of reimbursement through a lien on the shares,) do not make the tax on the shares in effect a tax on the bank's property, in violation of § 5219, *supra*.  P. 111.

4. In assessing shares in a national bank for taxation to the shareholders, no deduction need be made on account of securities of the United States, exempt from state taxation, which are part of the assets of the bank by which the value of the shares is measured, since the shares are property of the shareholders, distinct from the corporate assets.  P. 112.  *Bank of California* v. *Richardson*, 248 U. S. 476, distinguished.

5. The restriction that taxation of national bank shares "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens " of the State, (Rev. Stats., § 5219,) is to prevent discrimination against national banks in favor of state institutions or individuals engaged in similar business or

investments, and applies to rules of valuation as well as to tax percentages. P. 116.

6. This restriction, however, is not violated when the State, perforce, deducts tax-exempt securities of the United States in assessing capital employed in private banking, while taxing (as the act of Congress allows) the value of the shares of national banks without allowance for such tax-exempt securities owned by such banks. *Id.*

191 Iowa, 1240, affirmed.

ERROR to a judgment of the Supreme Court of Iowa sustaining an assessment upon shares of the plaintiff in error Bank, in proceedings by way of appeal from the action of a board of equalization.

*Mr. J. G. Gamble,* with whom *Mr. R. L. Read* was on the brief, for plaintiff in error.

*Mr. Ben J. Gibson,* Attorney General of the State of Iowa, and *Mr. John J. Halloran,* with whom *Mr. Maxwell A. O'Brien* and *Mr. George F. Henry* were on the brief, for defendants in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This was a proceeding begun by a national bank in Iowa to secure a reduction in an assessment of the shares of its capital stock for taxing purposes, made in 1919.

The proceeding was in the nature of an appeal from the action of a board of equalization, and ultimately reached the Supreme Court of the State. The bank objected that the board had proceeded on a mistaken construction of the state statute respecting such assessments and that the statute, as construed and applied by the board, was invalid in that it was in conflict with the state constitution and with laws of the United States. The objections were overruled and the assessment upheld. 191 Iowa, 1240. The bank then sued out this writ of error.

The facts may be shortly stated. No assessment was made against the bank, save of its real property. The shares of its capital stock were assessed to their several owners, the stockholders. The aggregate of the bank's capital, surplus and undivided earnings, was taken as the value of the shares, and from this the amount actually invested in real property was deducted. A proportionate part of the remaining sum was attributed to each share. Among the bank's assets were various securities of the United States, concededly exempted from state taxation by laws of the United States. There was also some stock in a federal reserve bank, claimed to be likewise exempted. The bank sought to have these securities and this stock excluded in making the assessment; that is, to have their value deducted from the total of the capital, surplus and undivided earnings. The board declined to make the deduction, and pursued a like course in assessing shares in corporate state banks. Among the bank's competitors were some banks conducted by individuals,— private banking being admissible in that State. In assessing the moneyed capital employed by these private bankers in their banking business, the board excluded so much thereof as was invested in non-taxable securities of the United States. Twenty per cent. of each of the assessments here described, whether of bank shares or money employed in private banking, was set down or listed as the taxable value, as distinguished from the real value. The tax levy was to be at a uniform rate on such taxable value.

We are asked to go into the proper construction of the state statute and its validity under the state constitution. But these are questions of local law, the decision of which by the Supreme Court of the State is controlling. *First National Bank of Garnett* v. *Ayers,* 160 U. S. 660, 664; *Merchants' and Manufacturers' National Bank* v. *Pennsylvania,* 167 U. S. 461; *Lindsley* v. *Natural Car-*

bonic Gas Co., 220 U. S. 61, 73; Price v. Illinois, 238 U. S. 446, 451.

The only contentions made by the bank which we can consider are, first, that the state statute in substance commands an assessment of the property of the bank, rather than the shares of the stockholders, contrary to the terms of § 5219 of the Revised Statutes of the United States; secondly, that the statute, even if commanding an assessment of the shares of the stockholders, subjects securities of the United States and stock in a federal reserve bank to state taxation in disregard of exemptions arising out of laws of the United States, and, thirdly, that, if the assessment be of the shares, the statute subjects them to a higher rate of taxation than is laid on other moneyed capital of individual citizens,—meaning the private bankers,—and thereby violates a restriction imposed by § 5219 of the Revised Statutes of the United States.

It is settled that the relation of the national banks to the United States and the purposes intended to be subserved by their creation are such that there can be no taxation, by or under state authority, of the banks, their property or the shares of their capital stock otherwise than in conformity with the terms and restrictions embodied in the assent given by Congress to such taxation. People v. Weaver, 100 U. S. 539, 543; Rosenblatt v. Johnston, 104 U. S. 462; Mercantile National Bank v. New York, 121 U. S. 138, 154; Talbott v. Silver Bow County, 139 U. S. 438, 440; Owensboro National Bank v. Owensboro, 173 U. S. 664, 669; First National Bank of Gulfport v. Adams, 258 U. S. 362.

The congressional assent and the terms and restrictions accompanying it as existing at the time of this assessment are found in Rev. Stats., § 5219, which reads as follows [1]:

---

[1] Several important changes in § 5219 were made by an amendatory Act of March 4, 1923, c. 267, 42 Stat. 1499, but they have no bearing on this case.

" Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the State within which the association is located; but the legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located within the State, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and that the shares of any national banking association owned by non-residents of any State shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either State, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed."

This section shows, and the decisions under it hold, that what Congress intended was that national banks and their property should be free from taxation under state authority, other than taxes on their real property and on shares held by them in other national banks; and that all shares in such banks should be taxable to their owners, the stockholders, much as other personal property is taxable, but subject to the restriction that the shares be not taxed higher than other taxable moneyed capital employed in competition with such banks, and to the further restriction that the taxing of the shares of non-residents of the State be at the place where the bank is located. *People v. Commissioners,* 4 Wall. 244; *Bank of Redemption v. Boston,* 125 U. S. 60, 69; *Mercantile National Bank v. New York, supra; Owensboro National Bank* v. *Owensboro, supra; Bank of California* v. *Richardson,* 248 U. S. 476; *First National Bank of Gulfport* v. *Adams, supra.*

With this understanding of the terms and restrictions of the congressional assent we proceed to an examination

of the state statute and the particulars in which it is said to be in conflict with them and with tax-exempting laws of the United States. The main provisions of the statute are found in §§ 1310, 1322, 1322–1a and 1325 of the Code of Iowa,[2] which read as follows:

"Sec. 1310. . . . All moneyed capital within the meaning of section fifty-two hundred nineteen of the revised statutes of the United States shall be listed and assessed against the owner thereof at his place of business, and if a corporation at its principal place of business, at the same rate as state, savings, national bank and loan and trust company stock is taxed, in the same taxing district, and at the actual value of the moneyed capital so invested. The person or corporation using moneyed capital in competition with bank capital shall furnish the assessor upon demand a full and complete itemized sworn statement showing the amount of moneyed capital so used."

"Sec. 1322. Shares of stock of national banks and state and savings banks, and loan and trust companies, located in this state, shall be assessed to the individual stockholders at the place where the bank or loan and trust company is located. At the time the assessment is made the officers of national banks and state and savings banks and loan and trust companies shall furnish the assessor with lists of all the stockholders and the number of shares owned by each and the assessor shall list to each stockholder under the head of corporation stock the total value of such shares. To aid the assessor in fixing the value of such shares the said corporation shall furnish him a verified statement of all the matter provided in section thirteen hundred twenty-one of the supplement to the code 1907, which shall also show separately the amount of

[2] The reference is to the Code as amended April 6, 1911, Laws 34th General Assembly, p. 45,—the amendments being shown in the supplement of 1913.

the capital stock and the surplus and undivided earnings, and the assessor from such statement shall fix the· value of such stock based upon the capital, surplus, and undivided earnings. In arriving at the total value of· the shares of stock of such corporations, the amount of their capital actually invested in real estate owned by them and in the shares of stock of corporations owning only the. real estate (inclusive of leasehold interest, if any,) on or. in which the bank or trust company is located, shall be deducted from· the real value of such shares, and such real estate shall be assessed as other real estate, and the property of such· corporation shall not be otherwise assessed. A refusal to furnish the assessor with the list of stockholders and the information required under this section shall be deemed a misdemeanor and any bank or officer· thereof so refusing shall .be punished by a fine not exceeding five hundred dollars."

" Sec. 1322–1a. For the purpose of placing the taxa- · tion of bank and loan and trust company stock and moneyed capital as nearly as possible upon a taxable value relatively equal to the taxable value at which other property is now actually assessed throughout the state as compared with the actual value thereof, it· is hereby provided that state, savings and national bank stock and loan and trust company stock and moneyed capital shall be assessed and taxed upon the taxable value of twenty per cent. of the actual value thereof, determined ,as herein provided, which twenty per . cent. of the actual value shall be taken and considered as the taxable value and shall be taxed as other property in such taxing district."

" Sec. 1325. The corporations described in the preceding sections shall be liable for the payment. of the taxes assessed to the stockholders of such corporations, and such tax shall be payable by·the corporation in the same manner and· under the same penalties as in case of taxes

due from an individual taxpayer, and may be collected in the same manner as other taxes, or by action in the name of the county. Such corporations may recover from each stockholder his proportion of the taxes so paid, and shall have a lien on his stock and unpaid dividends therefor. If the unpaid dividends are not sufficient to pay such tax, the corporation may enforce such lien on the stock by public sale of the same, to be made by the sheriff at the principal office of such corporation in this state, after giving the stockholders thirty days' notice of the amount of such tax and the time and place of sale, such notices to be by registered letter addressed to the stockholder at his post-office address, as the same appears upon the books of the company, or is known by its secretary."

Section 1321 referred to in § 1322 relates to the assessment of capital employed in private banking. For present purposes it may be described as requiring the banker to submit to the assessor a sworn statement of the assets and liabilities of his bank with a particular description of such of the assets as are exempt from taxation, and as directing an assessment based on the aggregate value of moneys and credits less deposits, of bonds and stocks less such as are otherwise taxed in the State and of the other property pertaining to the business, but omitting the real estate, which is to be specially assessed as other real estate. The section does not purport to create any exemption or to do more in that regard than possibly to imply that exemptions otherwise created are to be respected. In practice the assessing officers when assessing the capital of private banks do deduct so much thereof as is invested in tax-exempt securities of the United States, but they do this because they regard it as necessary under the tax-exempting laws of the United States.

As construed by the Supreme Court of the State, the statute as a whole contemplates, and § 1322 requires, that

the shares be assessed to the stockholders as their property; and as illustrating that the statute makes a clear distinction between the shares and the property of the bank, the court points to the provision which requires that the real estate be assessed against the bank and to the succeeding provision which declares that "the property of such corporation shall not be otherwise assessed." This, without more, seems completely to refute the contention that what the statute really directs is an assessment of the bank's property instead of the stockholders' shares. The only argument advanced in support of the contention is drawn from the fact that the capital, surplus and undivided earnings of the bank are made the measure of the value of the shares (see *First National Bank of Remsen* v. *Hayes,* 186 Iowa, 892, 900), and from the fact that the bank is required primarily to pay the tax on the shares. In our opinion neither fact gives color to the contention.

The value of the shares must depend chiefly on the capital, surplus and undivided earnings of the bank. These are the substantial elements and are susceptible of ready ascertainment. Other possible elements are of relatively small weight and difficult of estimation. That controlling consideration is given to the former and none to the latter may result in an under-valuation, but it does not make the assessment any the less an assessment of the shares. Besides, it hardly lies with the stockholders or the bank to object that the assessment is too low. *Stanley* v. *Supervisors of Albany,* 121 U. S. 535, 549.

While the bank is required primarily to pay the tax on the shares, the statute (§ 1325) shows that the payment is to be on behalf of the stockholders and that the bank is accorded ample means of enforcing reimbursement from them. It is on the stockholders that the burden ultimately rests. This mode of collecting through the bank the tax against the stockholders has been widely

. ... nted and this court has pronounced it not inconsistent w.... ..the terms of the congressional assent. *National Bank* v. *Commonwealth,* 9 Wall. 353, 361; *Aberdeen Bank* v. *Chehalis County,* 166 U. S. 440, 444; *Covington* v. *First National. Bank,* 198 U. S. 100, 111–112; *First National Bank of Gulfport* v. *Adams, supra.*

The next contention—that the statute subjects securities of the United States to taxation contrary to exempting laws of the United States in that it requires that the assessment be based on the aggregate of the capital, surplus and undivided earnings without any deduction or allowance on account of the investment in such securities—confuses the shares, which are the property of the stockholders, with the corporate assets, which are the property of the bank. It is quite true that the States may not tax such securities, but equally true that they may tax the shares in a corporation to their owners, the stockholders, although the corporate assets consist largely of such securities, and that in assessing the shares it is not necessary to deduct what is invested in the securities. The difference turns on the distinction between the corporate assets and the shares,—the one belonging to the corporation as an artificial entity and the other to the stockholders. As respects national banks, the rule is the same as with corporations in general. The subject was extensively considered by this court in *Van Allen* v. *The Assessors,* 3 Wall. 573, which involved the power of a State to tax stockholders in national banks on their shares without making any deduction on account of tax-exempt bonds of the United States in which the capital of the banks was chiefly invested. In sustaining the power, the court said, p. 583:

" The tax on the shares is not a tax on the capital of the bank. The corporation is the legal owner of all the property of the bank, real and personal; and within the powers conferred upon it by the charter, and for the pur-

poses for which it was created, can deal with the corporate
property as absolutely as a private individual can deal
with his own. . . .. The individual members of the
corporation are no doubt interested in one sense in the
property of the corporation, as they may derive individual
benefits from its increase, or loss from its decrease; but
in no legal sense are the individual members the owners.

"The interest of the shareholder entitles him to par-
ticipate in the net profits earned by the bank in the em-
ployment of its capital, during the existence of its charter,
in proportion to the number of his shares; and, upon its
dissolution or termination, to his proportion of the prop-
erty that may remain of the corporation after the pay-
ment of its debts. This is a distinct independent interest
or property, held by the shareholder like any other prop-
erty that may belong to him. Now, it is this interest
which the act of Congress has left subject to taxation by
the States, under the limitations prescribed, as will be
seen on referring to it."

Then, after noticing the use made of the term "shares"
in other parts of the act, the court added, p. 588:

"In all these instances, it is manifest that the term as
used means the entire interest of the shareholder; and it
would be singular, if in the use of the term in the con-
nection of State taxation, Congress intended a totally
different meaning, without any indication of such intent.

"This is an answer to the argument that the *term*, as
used here, means only the interest of the shareholder as
representing the portion of the capital, if any, not in-
vested in the bonds of the government, and that the State
assessors must institute an inquiry into the investment of
the capital of the bank, and ascertain what portion is
invested in these bonds, and make a discrimination in the
assessment of the shares. If Congress had intended any
such discrimination, it would have been an easy matter to

have said so. Certainly, so grave and important a change
in the use of this term, if so intended, would not have
been left to judicial construction.

" Upon the whole, after the maturest consideration
which we have been able to give to this case, we are
satisfied that the States possess the power to tax the whole
of the interest of the shareholder in the shares held by
him in these associations, within the limit prescribed by
the act authorizing their organization."

That ruling often has been reaffirmed, but never quali-
fied, and is now settled law in this court. *People v. Com-
missioners,* 4 Wall. 244; *National Bank* v. *Commonwealth,
supra,* p. 359; *Palmer* v. *McMahon,* 133 U. S. 660, 666;
*Bank of Commerce* v. *Tennessee,* 161 U. S. 134, 146;
*New Orleans* v. *Citizens' Bank,* 167 U. S. 371, 402; *Owens-
boro National Bank* v. *Owensboro, supra,* p. 681; *Home
Savings Bank* v. *Des Moines,* 205 U. S. 503, 518. The
latest application of the ruling was at the last term in
*People's National Bank of Kingfisher* v. *Board of Equal-
ization,* 260 U. S. 702, where a decision of the Supreme
Court of Oklahoma, 79 Okla. 312, which had followed *Van
Allen* v. *The Assessors,* was affirmed " upon the authority
of " that case and *National Bank* v. *Commonwealth.*

Counsel for the bank regard the case of *Bank of Cali-
fornia* v. *Richardson,* 248 U. S. 476, as qualifying *Van
Allen* v. *The Assessors* and other cases which reaffirmed
and applied its uling. But the case is not fairly open to
that interpretation. Some expressions are found in the
opinion which, if taken literally and alone, seem to treat
the stockholders and the bank as one for taxing purposes;
but the opinion as a whole and the ultimate decision
demonstrate that these expressions fairly cannot be taken
in that way and that there was no purpose to qualify the
ruling so often announced and applied in earlier cases.
That case was exceptional in its facts. A national bank
owning shares in two other banks, one national and the

other state (see § 5154, Rev. Stats.), was taxed on those shares. Its stockholders were also taxed on their shares in it,—their shares being taxed on a valuation which took into account all the assets of the bank, other than real estate, including its shares in the other banks. The bank objected to being taxed on its shares in the state bank and also to its stockholders being taxed on a valuation of their shares based in part on its shares in the other banks,—the ground of each objection being that the tax was not in accord with the terms and spirit of the congressional assent. The decision shortly stated was as follows: 1. The bank was wrongly taxed on its shares in the state bank; but those shares were rightly taken into account in valuing the shares of the stockholders. 2. The bank was rightly taxed on its shares in the other national bank, for the reasons given in *Bank of Redemption* v. *Boston,* 125 U. S. 60, 69–70. 3. The shares in the other national bank were wrongly taken into account in valuing the shares of the stockholders, because the provision under which they were taxed to the bank was intended to be exclusive and to prevent the values in the shares from being made, directly or indirectly, a basis for any other or further taxation. On the first and second points, the members of the court were all in accord, but on the third there was a strong dissent,—the matter in difference being whether the State, consistently with the terms and spirit of the congressional assent, could tax the shares in the hands of the bank which owned them, and also subject the values in them to another tax laid on the bank's stockholders. The difference was resolved against the further taxation because of what was deemed an implicit restriction in the congressional assent. There had been no prior decision on that point, and it is not involved in the case now under consideration.

What has been said respecting the tax-exempt securities among the bank's assets disposes of the contention

relating to its stock in a federal reserve bank. If, as is insisted, the stock was exempt, it was to be treated and considered in the same way that the securities were. And whether exempt or not, there was no authority for taxing it to the bank, but only for taking it into account in valuing the shares of the stockholders. ·

The contention that the state statute subjects shares in a national bank to a higher rate of taxation than is laid on other moneyed capital in the hands of individual citizens is rested on the fact that in assessing capital employed in private banking the part invested in tax-exempt securities of the United States is deducted, while in assessing national bank shares the bank's investment in such securities is not deducted.

The provision found in the congressional assent, that the taxation of the shares "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State," has been considered by this court so many times that its purpose and meaning have come to be pretty well understood. Its main purpose is to render it impossible for the State, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a business similar to that of national banks or engaging in operations and investments of a like character; and the restriction comprehends a discrimination effected through rules for fixing valuations quite as much as one effected by using different percentages in computing taxes on fixed valuations. *People* v. *Weaver,* 100 U. S. 539, 545; *Mercantile National Bank* v. *New York,* 121 U. S. 138, 155; *Amoskeag Savings Bank* v. *Purdy,* 231 U. S. 373, 385.

Our concern here is not with a voluntary refusal or intentional omission on the part of the State to tax other moneyed capital of citizens as it taxes national bank shares, but with a submission by the State to superior

laws of the United States exempting a part of the other moneyed capital from state taxation. It may be helpful to state the matter in another way. National bank shares are taxable,—made so by the congressional assent. That much or little of the bank's assets consists of tax-exempt securities of the United States does not affect the taxability of the shares,—they being distinct from the corporate assets. The State taxes such shares without regard to the exempt government securities held by the bank. The capital of private bankers is taxable, save the part invested in exempt government securities. The State taxes all of that capital, save the exempt securities. They are exempt because the United States makes them so, and the State merely respects the exemption. In what is thus done does the State discriminate against national bank shares and in favor of other moneyed capital in the sense of the restriction? The question is not new; nor can it be regarded as an open one in this court.

In *People* v. *Commissioners,* 4 Wall. 244, the question was whether, in the presence of the restriction, a State could assess and tax to their owners shares in national banks without making any deduction on account of tax-exempt securities of the United States held by the banks, when in taxing moneyed capital of individuals employed in competition with those banks such a deduction was made. The court gave an affirmative answer to the question, saying, p. 256:

" The answer is, that upon a true construction of this clause of the act, the meaning and intent of the lawmakers were, that the rate of taxation of the shares should be the same, or not greater, than upon the moneyed capital of the individual citizen which is subject or liable to taxation. That is, no greater proportion or percentage of tax in the valuation of the shares should be levied· than upon other moneyed taxable capital in the hands of the citizens.

"This rule seems to be as effectual a test to prevent unjust discrimination against the shareholders as could well be devised. It embraces a class which constitutes the body politic of the State, who make its laws and provide for its taxes. They can not be greater than the citizens impose upon themselves. It is known as sound policy that, in every well-regulated and enlightened state or government, certain descriptions of property, and also certain institutions—such as churches, hospitals, academies, cemeteries, and the like—are exempt from taxation; but these exemptions have never been regarded as disturbing the rates of taxation, even where the fundamental law had ordained that it should be uniform.

"The objection is a singular one. At the time Congress enacted this rule as a limitation against discrimination, it was well known to that body that these securities in the hands of the citizen were exempt from taxation. It had been so held by this court, and, for abundant caution, had passed into a law.

"The argument founded on the objection, if it proves anything, proves that these securities should have been taxed in the hands of individuals to equalize the taxation; and, hence, that Congress by this clause in the proviso intended to subject them, as thus situated, to taxation; and, therefore, there was error in the deduction. This we do not suppose is claimed. But if this is not the result of the argument, then, the other conclusion from it is, that Congress required that the commissioners should deduct the securities, and at the same time intended the deduction, if made, should operate as a violation of the rate of the tax prescribed. We dissent from both conclusions."

That view of the matter has been adopted and given effect in all subsequent cases presenting the question. *Lionberger* v. *Rouse,* 9 Wall. 468, 475; *Hepburn* v. *School Directors*, 23 Wall. 480, 485; *Adams* v. *Nashville*, 95 U. S.

19, 22; *Mercantile National Bank* v. *New York,* 121 U. S. 138, 149, 161. Counsel for the bank regard *Van Allen* v. *The Assessors, supra,* p. 581, as making for the other view. But that it does not do so is plainly pointed out in *Mercantile National Bank* v. *New York, supra,* p. 152. We perceive no reason for disturbing prior decisions on the point.

Our conclusion is that none of the objections urged against the state statute is well taken.

*Judgment affirmed.*