**ODLAND v. FINDLEY, County Treasurer, et al.**

**In re FIRST NAT. BANK OF BETHESDA, OHIO.**

Civil No. 100.

District Court, S. D. Ohio, E. D.

May 3, 1941.

564

T. J. Kremer, of Woodsfield, Ohio, and Arthur L. Limbach, of New Philadelphia, Ohio, for plaintiff.

Ross Michener, of Bridgeport, Ohio, and C. C. Sedgwick, of Bellaire, Ohio, for defendants.

UNDERWOOD, District Judge.

This is an action brought by the plaintiff, J. S. Odland, receiver of the First National Bank of Bethesda, Ohio, against certain officials of Belmont County, Ohio, in their respective official capacities; that is, against Homer J. Findley, Treasurer, E. E. Taylor, Auditor, and Jesse A. Wilson, Recorder, defendants herein. It is the purpose of the action to free the receiver and certain funds held by him as such, from alleged claims of Belmont County, Ohio, for taxes.

The facts involved in the case may be briefly stated as follows:

The Belmont National Bank of Belmont, Ohio, and the First National Bank of Bethesda, Ohio, were national banking associations, organized and existing under the laws of the United States and located in Belmont County, Ohio, having so existed during the year of 1928 and thereafter until their business was terminated by authority of the United States Government.

On or about February 9, 1931, the First National Bank of Bethesda acquired all of the assets of the Belmont National Bank and assumed its liabilities. The Belmont National Bank was declared insolvent by the Comptroller of Currency of the United States, who appointed a receiver for it. The First National Bank of Bethesda did not obtain a license to engage in normal banking business on or after March 6, 1933, being in the custody of a conservator appointed by the Comptroller until about November 5, 1934. On the latter date, it was declared insolvent by the Comptroller and was closed for the purpose of liquidation; Thomas Dornon being appointed receiver and serving until December 5, 1936, when he was replaced by Harry Briggs. Mr. Briggs served until May 20, 1939, when J. S. Odland, the present receiver and plaintiff herein, was appointed.

The subject matter of this suit grew out of a series of acts and transactions having to do with the assessment of taxes by Belmont County, Ohio, based upon the value of the capital stock of the banks and now asserted as a claim against the funds in the hands of the receiver.

Pursuant to the provisions of Sections 5407 to 5414, inclusive, of the General Code of Ohio, both banks severally, and at the times required by the statutes reported to the County Auditor of Belmont County, for the years 1928, 1929 and 1930, stating their resources and liabilities, the names and residences of their shareholders, the number of shares held by each, and the par value of each share. These reports were accompanied by copies of the appropriate reports rendered by the banks to the Comptroller and showed the value of the real estate owned by the banks for the pertinent year. Also in conformity with the statutes of Ohio, each bank kept in its place of business full and correct lists of the names and residences of its stockholders and the number of shares held by each. These lists were open at all reasonable times to the inspection of the state and county taxing officials.

When these reports made by the banks to the County Auditor were received by him for the years 1928, 1929 and 1930, he fixed the total value of the shares, deducted the value of the real estate and determined the taxable valuation of the shares in the aggregate, to be entered on the personal property tax duplicate of each of the years in question. Due reports of these proceedings and facts were made to the Tax Commission of Ohio.

The Auditor entered the total value of the shares so determined upon the appropriate tax list and the Treasurer's tax duplicate of taxes on personal property in the respective villages where the banks were located, together with the total amount of the taxes due thereon at the effective rate applicable thereto. This listing was made in the names of the banks and divided as to the halves to be paid semi-annually. There was no listing whatever made in the names of, or against any of the shareholders and none of the taxes were paid by the shareholders individually. This same procedure was followed in each of the years 1912 to 1928 and no complaint or objection was ever made by either of the banks. The First National Bank of Bethesda paid the first half of the taxes for 1928 and neither bank made any further payments thereon.

After August in each of the years 1929, 1930 and 1931, these taxes for the calendar year next preceding were entered on the tax duplicate of the Treasurer as delinquent, together with the penalty thereon. Thereafter on December 1, 1932, the Auditor filed in the office of the Recorder a duplicate of such taxes remaining unpaid including those charged against the banks, and in the names of the banks.

It is apparent that during each of the years 1928, 1929 and 1930, each of the banks had substantial resources in excess of their liabilities and that each of the banks paid dividends to shareholders in 1928 and 1929 in excess of the taxes due on the shares. The First National Bank of Bethesda made like payments of dividends under similar conditions in 1930 and 1931.

Legal action with respect to the taxes began in July, 1929, when the Belmont National Bank filed suit in the Court of Common Pleas of Belmont County seeking a permanent injunction prohibiting the County Treasurer and the County Auditor from collecting the taxes for 1928. Two other suits of like character were later filed with respect to the taxes for 1929 and 1930. In each case the plaintiff bank gave bond in the sum of $200 and secured the issuance of a temporary restraining order in an ex parte proceeding. Summons were issued and served and the defendants moved to dissolve the restraining orders. The motion was denied in each case. On June 25, 1934, the Court of Common Pleas granted leave to the plaintiff to file amended petitions and upon motion of the defendants ordered that if such amended petitions be not filed within thirty days, the cases would stand dismissed at the costs of the plaintiff, and without prejudice. The plaintiff took no further action and the cases were so dismissed on August 13, 1934. The restraining orders were dissolved and there was no appeal nor proceedings in error.

The next proceeding was brought by the receiver, Thomas Dornon (Case No. 2826), in the Court of Common Pleas of Belmont County to secure the approval of that court for the sale of real estate belonging to the trust. The purchasers, after the approval of the court, declined to take the property on account of the apparent lien for taxes. Thereupon the Receiver filed Case No. 5994 in the same court, in which he stated the pertinent facts and named the Treasurer, Auditor and the Recorder of Belmont County as defendants. The receiver prayed: "That said pretended lien existing against the real estate of The First National Bank of Bethesda, Ohio, and the real estate acquired from The Belmont National Bank of Belmont, Ohio, for the years aforesaid be cancelled and held for naught and that said Receiver be authorized and directed to sell and convey said real estate, free from all liens existing in favor of Belmont County, Ohio, against said real estate, and that whatever claim or right that Belmont County may have against said banks by virtue of said taxes shall follow the proceeds derived from the sale of said real estate in the hands of the Receiver and that the lien against said real estate be discharged on the records of Belmont County, Ohio, and that said defendants and their successors in office be enjoined from asserting or attempting to assert a lien against the real estate of the Belmont National Bank of Belmont, Ohio, and The First National Bank of Bethesda, Ohio, or their Grantees or Assigns." The decree of the court granted the relief requested in practically the same terms as the prayer. Nothing further was done in that court, but the receiver filed his petition here asking that this court declare the rights of the parties and: " * * * that all of said alleged or pretended taxes, together with penalties listed, levied and assessed against said banks for the years aforesaid, be declared, adjudged and decreed to be invalid, illegal and void and/or uncollectable from said plaintiff; * * *" The prayer concludes with the request that this court make its findings effective by appropriate injunction.

The answer of the defendants sets forth six defenses: First, that this court is without jurisdiction of the subject matter; second, that the complaint does not state a cause of action upon which relief can be granted; third, apparently in the nature of a general denial averring the legality of the tax and method of handling it; fourth, that this action cannot be maintained here in view of the former actions relative to the same subject matter heretofore had in the state courts; fifth, that the defendants relied upon the conduct and acquiescence of the banks; and sixth, that the banks made no timely com-

566

plaint or appeal. The answer asserts two counterclaims: First, for the taxes claimed to be due together with penalty and interest; and second, for damages in the amount of $1,200 and interest, that being the total penal sums of the bonds given in the state court when the restraining orders were issued in the actions brought by the banks, said actions being afterward dismissed without prejudice.

The reply of the plaintiff admits that actions were filed in the state court as alleged in the fourth defense, admits the facts in connection therewith and denies that they in any manner, bar the present action. The fifth defense of the answer is denied generally for want of information, alleging that it is not a valid defense and that all funds in the hands of the plaintiff will be paid to depositors and none to shareholders. It is, however, admitted by stipulation that such alleged facts are true, if material. The sixth defense is denied and the plaintiff alleges further that it is immaterial.

For answer to the first counterclaim, it is admitted that the taxes stand charged against the banks as alleged, but it is averred that the same constitute a tax against the property of the banks. This is coupled with a general denial. For answer to the second counterclaim, plaintiff admits that bonds were posted but denies the remainder of said allegations.

The case was submitted to the court upon the pleadings, admissions, stipulations, exhibits and briefs, without the introduction of oral evidence.

■■■ Coming now to consideration of the merits of the case, the court finds that the first defense of the defendants' answer relative to lack of jurisdiction is not well taken. This same question was disposed of by the court in a memorandum dated March 18, 1940, ruling upon a motion to dismiss filed by the defendants. The second and third defenses will be disposed of in the course of this memorandum. The fourth defense is not well taken due to the fact that the six actions filed by the banks were dismissed without prejudice, settling nothing, and the action filed by the receiver in the state court merely sought and obtained leave of court to sell free and clear, transferring the lien, if any, to the proceeds. Neither the validity of the taxes nor of the lien was determined and these questions are now for determination. This

court is of the further opinion that the fifth defense averring the compliance of the banks and the sixth, their lack of appeal or protest, are not well taken and constitute no defense against this receiver plaintiff herein.

■■■ For the purposes of this memorandum, there is but one fundamental issue in this case and that is whether or not the defendants herein can compel the plaintiff to pay the taxes claimed by Belmont County. Any consideration of this question must begin with the primary principle that national banks cannot be taxed by state governments or political subdivisions upon their property or shares except insofar as Congress may grant that right by express permission. Iowa-Des Moines National Bank v. Bennett, Chairman, et al., 284 U.S. 239, 52 S.Ct. 133, 76 L.Ed. 265. The mere silence of Congress in this respect, in itself constitutes a ban. First National Bank of Richmond v. City of Richmond et al., C.C., 39 F. 309, affirmed, 149 U.S. 769, 13 S.Ct. 1044, 37 L.Ed. 959. Therefore, the states and their agencies must look to the statutes of the United States for the basis of any claimed right or authority to tax such banks. Such right or authority in this case can be no broader than that specifically granted by Title 12, Section 548, U.S.C.A., which provides that states may: "(1) tax said shares, or (2) include dividends derived therefrom in the taxable income of an owner or holder thereof, or (3) tax such associations on their net income, or (4) according to or measured by their net income * * *." Subdivision 1(a) of the same Section further provides that: "The imposition by any State of any one of the above four forms of taxation shall be in lieu of the others, except as hereinafter provided in subdivision (c) of this clause." Subdivision (c) merely prescribes the terms and conditions attached to Subdivision 3 of the Section.

By the statutes in effect at the time in question, Ohio had elected to tax the shares in all banks, state and national, upon the same basis. Ohio G.C. § 5408. In the instant case, the two banks kept in their places of business and open to the inspection of the taxing officials, lists showing the names and residences of all stockholders and the number of shares held by each as required by Ohio G.C. § 5410. For each of the years 1928, 1929 and 1930, at the proper times, the cashiers of the

banks made reports to the County Auditor setting forth the resources and liabilities of the banks and furnishing therewith a list of the names and residences of stockholders and the number of shares held by each in compliance with Ohio G.C. § 5411. When these reports were received by the Auditor, he fixed the value of the shares in money and deducted from the aggregate, the value of the real estate held by the banks as required by Ohio G.C. § 5412.

In all of the county tax records the taxes due upon such shares were listed in the aggregate as personal property, in the names of and as against the banks. No listing was made in the names of the individual shareholders and no tax was ever paid directly to the county by any shareholder. Section 5672 of the Ohio General Code made it the duty of the banks to collect the taxes, made the tax a lien upon the shares themselves and provided further that if the banks should fail to pay, each would be liable by way of penalty for the tax plus $100 per day for the delay in payment. By way of protecting the banks, Section 5673, Ohio G.C., provided that the banks paying the taxes should have a lien upon the shares and all property of the shareholders in possession of the banks or coming into possession of the banks.

There is no question as to the right of the state to impose a tax upon the shareholders; that right was specifically granted by federal statute. Also, the Supreme Court of the United States held in Des Moines National Bank v. Fairweather, Mayor et al., 263 U.S. 103, 44 S.Ct. 23, 68 L.Ed. 191, that the state might make the bank primarily liable in the first instance for payment of the taxes while at the same time providing ample means for the bank to recover from its shareholders. However, it must be kept in mind that the right to tax as granted by Congress is the right to tax shares and the bank pays as agent, the tax in itself must be a tax upon the shareholders and not upon the assets of the bank.

It is not denied in this case that the banks could have paid the taxes in the years when they should have been paid and that they then had funds belonging to their shareholders from which they could have reimbursed themselves, but the banks did not make the payments. Consequently the taxes for the years 1928, 1929 and 1930 were increased by the addition of a 10% penalty and certified over to the Recorder to become a purported lien upon the property of the banks.

It is to be presumed that the statutes of the state of Ohio are valid until it be shown otherwise and it is likewise to be presumed that the county officials acting under these statutes acted legally until the contrary appears. Hence, although the handling of tax listings in this case would have been exactly the same if the assessment had been made directly against the banks, still it may, for present purposes, be presumed that this was simply a listing against the banks as agents for their shareholders, but for convenience, carried in the names of the banks. There is, however, a limit beyond which such presumption may not run. Section 5672, Ohio G.C., provided that banks not collecting and paying the tax should be assessed a penalty in the amount of the tax plus $100 per day for the delay. That is not what the taxing officials did; what they actually did do, was to certify the delinquent taxes over to the Recorder in the same form in which they had been carried, plus a 10% penalty, exactly as would have been done, had the original been against the banks directly as it appears that it might have been. It was at this point that taxes listed in the names of the banks as agents for their shareholders, became apparent assessments directly against the property of the banks and the taxes due from the shareholders became asserted liens directly upon the property of the banks. There is no authority in either state or federal law for that shift of liability. Can it be said that this constituted an assessment of penalty against the banks under Section 5672, Ohio G.C.? This court is of the opinion that it was not: First, because this is not the penalty therein provided, and secondly, because it is the penalty provided for delinquent taxes in general.

Now these taxes are asserted against the fund in the hands of the receiver. Admittedly the receiver has in his possession, nothing belonging to the shareholders; everything that he has, or will have, will go to the creditors of the banks. The agency of the banks for their shareholders terminated when the banks were declared insolvent. The banks now have existence only in the authority of the receiver; they are beyond the reach of

568

taxes or penalty and any allowance of taxes will come not from the shareholders who owe it, but from the corpus of the estate which is actually and in effect, the property of the creditors. The time has thus passed when the banks can be called upon to respond as agents for their shareholders, hence it follows that at this time the collection of such tax would result in collecting from the creditors the taxes due from the shareholders. If collection be permitted, it would result in direct taxation against the assets of the banks, based upon the value of the net assets, less real estate. Such an imposition of taxes upon the basis stated, is not within the permissive terms of Section 548, Title 12 U.S.C.A.

It is therefore the opinion of this court that under the circumstances of this case, neither the taxes nor the penalty claimed can be asserted against the receiver, nor can they be asserted against the assets of the banks.

The court further holds that the defendants cannot recover upon either their first or second counterclaims for the reasons hereinbefore stated.

It is further held that the plaintiff is not entitled to recover in any manner the one-half of the taxes paid by the one bank for the year 1928.

Entry accordingly.