460 P.2d 64 (1969)
80 N.M. 690
The FIRST NATIONAL BANK OF SANTA FE, Claimant-Appellant,
v.
The COMMISSIONER OF REVENUE of the State of New Mexico, Appellee.
No. 288.
Court of Appeals of New Mexico.
September 5, 1969.
Certiorari Denied October 15, 1969.
W. W. Gilbert, White, Gilbert, Koch & Kelly, Santa Fe, for appellant.
James A. Maloney, Atty. Gen., Justin Reid, Asst. Atty. Gen., Santa Fe, for appellee.

OPINION
OMAN, Judge.
This appeal has been taken by the First National Bank of Santa Fe, hereinafter called Bank, from a decision of the Commissioner of Revenue of the State of New Mexico, hereinafter called Commissioner, whereby the Commissioner denied the Bank's claim for refund of gross receipts tax. The appeal is before this court pursuant to § 72-13-39, N.M.S.A. 1953 (Repl. Vol. 10, pt. 2, Supp. 1967), [N.M. Laws 1966, ch. 30, § 3].
The matter was presented to the Commissioner on stipulated facts. None of the findings of fact made by the Commissioner has been challenged. Two points for reversal were asserted by the Bank in its brief in chief. One of these has been conceded by the Commissioner. However, this concession does not dispose of this appeal. We must decide the other and principal point in which the Bank claims: "The State is forbidden to levy the tax in question by Federal law."
The facts essential to an understanding and determination of the issue are as follows:
(1) The Bank is a national banking association organized and existing under and by virtue of 12 U.S.C. § 21 et seq. (1964).
(2) The Bank owns an electronic data processing machine upon which it maintains and processes its own demand and checking account records.
(3) On or after July 1, 1967, the Bank entered into contracts with four unaffiliated banks (three state and one national) to maintain and process their demand account records on the Bank's machine for a fee or charge to be computed on the basis of activity and number of accounts processed.
(4) Electronic data processing of such accounts is a convenience but not a necessity for the conduct of the banking functions of any of the banks. It is a service made available commercially by non-banking institutions in Albuquerque and elsewhere.
(5) The gross receipts tax was imposed upon the Bank's receipts for the bookkeeping or accounting service rendered to the four other banks to whom it was under no *66 obligation, except for the contracts aforesaid.
(6) The tax imposed is not a sales or use tax imposed upon the Bank's purchase of tangible personal property for its own use.
(7) Pursuant to its contracts, the Bank collected from the four banks for whom it performed said services the gross receipts tax, but is obligated to refund the same if successful on this appeal.
The Bank's position is that the majority opinion in First Agricultural Nat. Bank v. State Tax Commission, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968), is controlling and under that opinion the state may tax a national bank, except for its real estate, only in one of the four ways authorized by 12 U.S.C. § 548 (1964). Unquestionably, language used by the Supreme Court of the United States in the Agricultural Nat. Bank case, in Des Moines National Bank v. Fairweather, 263 U.S. 103, 44 S.Ct. 23, 68 L.Ed. 191 (1923), and in Owensboro National Bank v. Owensboro, 173 U.S. 664, 19 S.Ct. 537, 43 L.Ed. 850 (1899), supports this position. The opinions in First National Bank of Homestead, Florida v. Dickinson, 291 F. Supp. 855 (N.D.Fla. 1968), affirmed without opinion in 393 U.S. 409, 89 S.Ct. 685, 21 L.Ed.2d 634 (1969), and Northwestern National Bank of Sioux Falls v. Gillis, 82 S.D. 457, 148 N.W.2d 293 (1967), also appear to support this position.
However, insofar as we can tell from the opinions therein, none of these cases involved the question of a tax upon fees or charges made by a national bank for commercial services performed outside the scope of its banking powers as authorized by Congress. These powers are specified in 12 U.S.C. § 24 (1964), and they do not include the furnishing of services such as those here involved. Congress has made provision for the creation of "Bank Service Corporations." 12 U.S.C. ch. 18 (1964). These federally-chartered corporations are expressly granted the power to perform for banks such services as those here involved, but there is no congressional limitation on a state's power to tax these corporations.
The fact that the enumerated powers of a national bank do not include the performance of such services for other banks, the fact that Bank Service Corporations are expressly empowered to perform such services for banks, and the fact that Congress has not limited the taxation by a state of Bank Service Corporations, indicates to us that Congress does not intend that the performance of these services may not be taxed by a state. It seems illogical to us to hold that Congress intended to limit a state's taxation on functions or services performed by national banks, when such functions or services are clearly not necessary, and not reasonably incident, to the execution of the powers conferred by Congress thereon.
In Arizona State Tax Com'n.v. First Bank Building Corp., 5 Ariz. App. 594, 429 P.2d 481 (1967), the building corporation was duly organized and qualified to do business in Arizona. All of its issued and outstanding stock was held and owned by the First National Bank of Arizona, a national banking association; the executive committee of the bank served as the board of directors for the building corporation; all of the officers of the building corporation were also officers of the bank; all of the bookkeeping with respect to the building corporation books and accounts was performed by personnel of the bank; and the building corporation had no employees. The state had assessed against the building corporation a transaction and privilege tax upon rentals from several properties owned by it. It claimed exemption from the tax on the ground that its ownership of the properties was solely for the benefit and convenience of the bank, and that each of its properties had a direct relationship to the transacting of business by the bank. It relied upon the holding in O'Neil v. Valley Nat. Bank of Phoenix, 58 Ariz. 539, 121 P.2d 646 (1942).
*67 The Arizona court of appeals rejected the claimed exemption, and in so doing stated:
"* * * we would hold that plaintiff having been created as a separate entity enjoying the benefits of a corporate existence including, among others, real estate holding and tax advantages, and although performing functions of importance as a subsidiary of a national bank, the taxing by the commission of the business in which it is engaged herein is not such as to impair the operation of said bank as to make it exempt from state taxation within the meaning of the laws giving it the claimed immunity under 12 U.S.C. § 548. Commissioner of Banks v. Chase Securities Corporation, 298 Mass. 285, 10 N.E.2d 472 (1937)."
Although the Arizona court based its rejection of the claimed exemption in part upon the separate corporate existence of the building corporation, the quoted language shows the rejection was also predicated in part upon the fact that the imposition of the tax was not such as to impair the operation of the bank to the extent of clothing the building corporation's activities with immunity under 12 U.S.C. § 548 (1964). That is, the tax exemption granted by Congress to national banks is to be determined not alone by its existence as such a bank, but, at least in part, by the nature of the activities, or services, it has performed upon which a tax is imposed.
We are of the opinion that the question of the propriety of the imposition of a tax on an activity or service performed by a national bank should be determined on the basis of whether the activity or service is reasonably related or incidental to the accomplishment of its bank functions. This is consistent with the intent of the New Mexico Legislature in enacting the present tax law on banks and financial corporations [N.M. Laws, 1969, ch. 151]. Section 6 of this act provides:
"The taxes imposed by Sections 3 and 4 of the Banking and Financial Corporations Tax Act are in lieu of all other taxes imposed by the state and its political subdivisions upon banks and financial corporations for calendar year 1969 and all subsequent years, except taxes upon their real property and taxes arising from activities which are not in the course of their regular banking and financial corporation functions." [Emphasis added].
We believe our opinion is also in accord with the declarations of the Supreme Court of the United States to the effect that exemption or immunity from taxation is to be narrowly restricted, and, in case of doubt as to the existence or extent thereof, the doubt should be decided in favor of the taxing authority. In Bank of Commerce v. Tennessee, 104 U.S. 493, 26 L.Ed. 810 (1882), which involved the extent of tax exemption of a state bank under its charter and the state law, the court stated:
"That statutes imposing restrictions upon the taxing power of a State, except so far as they tend to secure uniformity and equality of assessment, are to be strictly construed, is a familiar rule. Against the power nothing is to be taken by inference and presumption. Where a doubt arises as to the existence of the restriction, it is to be decided in favor of the State. * * * In our judgment, the limited exemption cannot be extended to property used beyond the actual wants of the Corporation in carrying out the purpose of its creation. As well observed by the Supreme Court of the State, the contract of exemption, beyond the extent prescribed, ceased when taxable property was held for any other purpose.
"* * *
"* * * The doctrine declared in them [cited railroad cases] that the exemption, in cases like the one in the charter before us, extends only to the property necessary for the business of the company, is founded in the wisest reasons of public policy. It would lead to infinite mischief if a corporation, simply by investing its funds in property not required for the purposes of its creation, *68 could extend its immunity from taxation, and thus escape the common burden of government."
In Graves v. New York ex rel. O'Keefe, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927 (1939), which involved the question of the imposition of a state income tax on the salary of an employee of the Home Owners' Loan Corporation, the court stated:
"* * * The theory of the tax immunity of either government, state or national, and its instrumentalities, from taxation by the other, has been rested upon an implied limitation on the taxing power of each, such as to forestall undue interference, through the exercise of that power, with the governmental activities of the other. * * *
"* * *
"* * * the implied immunity of one government and its agencies from taxation by the other should, as a principle of constitutional construction, be narrowly restricted. For the expansion of the immunity of the one government correspondingly curtails the sovereign power of the other to tax, and where that immunity is invoked by the private citizen it tends to operate for his benefit at the expense of the taxing government and without corresponding benefit to the government in whose name the immunity is claimed. * * *"
In Oklahoma Tax Commission v. Texas Co., 336 U.S. 342, 69 S.Ct. 561, 93 L.Ed. 721 (1949), which involved the question of immunity from state taxation of petroleum produced on Indian lands, the court stated:
"It is true that this Court's more recent pronouncements have beaten a fairly large retreat from its formerly prevailing ideas concerning the breadth of so-called intergovernmental immunities from taxation, a retreat which has run in both directions  to restrict the scope of immunity of private persons seeking to clothe themselves with governmental character from both federal and state taxation. * * *"
As to the general presumption against tax exemption and the strictness with which laws granting the same are construed, see City of Phoenix v. Bowles, 65 Ariz. 315, 180 P.2d 222 (1947); McKee, etc. v. Bureau of Revenue, 63 N.M. 185, 315 P.2d 832 (1957); Flaska v. State, 51 N.M. 13, 177 P.2d 174 (1946); Samosa v. Lopez, 19 N.M. 312, 142 P. 927 (1914).
In the case of Northwestern National Bank of Sioux Falls v. Gillis, supra, the Supreme Court of South Dakota, as above stated, apparently interpreted the provisions of 12 U.S.C. § 548 (1964), in accordance with the position here taken by the Bank, in that it held that a sales tax could not properly be imposed on a national bank for the sale and service by it of food and refreshments to its employees and guests in a cafeteria maintained by it for the convenience of those so served. This result was reached on the ground that the legal incidence of the sales tax rested on the bank as the retailer. Apparently no question was raised as to the propriety of the imposition of the tax by reason of the nature of the activity in which the services were performed and the sales accomplished.
The South Dakota court, however, required the bank to pay exactly the same amount as the state had sought to recover by the imposition of the sales tax. This the court did by holding the use tax applicable to the sales of food. This result was reached on the ground that the legal incidence of this tax fell upon the purchasers, and it was the duty of the bank to collect the tax from them. The fact that the tax was not actually collected made no difference, because the obligation to collect the tax and pay that amount to the state became an indebtedness by the bank to the state. The state could and did properly recover from the bank on this indebtedness an amount equal to the tax which the bank had failed to collect. In accord with this holding is the holding of the California court in Bank of America Nat. Trust & S. Ass'n v. State Bd. of Eq., 209 Cal. App.2d 780, 26 Cal. Rptr. 348 (1962).
Both the South Dakota and California courts relied upon Colorado National Bank of Denver v. Bedford, 310 U.S. 41, 60 S.Ct. *69 800, 84 L.Ed. 1067 (1940), as implying that a national bank may be made the agent of the state to collect a valid tax imposed on a third person with whom the bank deals. In failing to perform this duty as an agent of the state, the state may recover as a debt from the national bank an amount equal to the tax it failed to collect.
In the Colorado Bank case the statute there involved imposed:
"* * * upon the services specified in the act, a percentage tax based upon the value of the services rendered or performed by any person subject to its provisions.
"* * * [the] tax [was] equivalent to two per cent of the value of services rendered by `banks, finance companies, trust companies and depositories * * *.' The person rendering the services `shall be liable and responsible for the payment of the entire amount * * *.'"
It was also provided that:
"* * * persons rendering or performing the services are required `as far as practicable, [to] add the tax imposed * * * to the value of services or charges showing such tax as a separate and distinct item and when added such tax shall constitute a part of such value of service or charge, shall be a debt from the user to the person rendering or performing service until paid, and shall be recoverable at law in the same manner as other debts.' * * * the person rendering the service [was] forbidden to hold out directly or indirectly that he [would] assume or absorb the tax."
The service there involved was the rental of safe-deposit boxes located in a portion of the bank's vaults. The state contended "* * * the tax was on a non-banking activity foreign to its [the banks] federal character and on the user of the services * * *."
The court, in passing on these questions, stated in part:
"* * * Though the national banks' usefulness as an agency to provide for currency has diminished markedly, their importance as general bankers shows a constant growth. We may assume that national banks possess only the powers conferred by Congress. These * * * include `all such incidental powers as shall be necessary to carry on the business of banking,' * * *. We agree with the appellant bank that such a generally adopted method of safeguarding valuables [conduct of a safe-deposit box business] must be considered a banking function authorized by Congress.
"* * *
"Congress has not legislated against taxation of the customers of national banks. This court has approved a tax assessed upon the deposits of customers of national banks. By section 6 of the Colorado act the `person rendering or performing services shall be liable' for the payment of the tax imposed. But as subsection (b) of that same section requires the tax paid to be added to the charges for service `as a separate and distinct item' and makes it a debt from the user of the services until paid, the tax is upon the user of the safe deposit boxes, not upon the bank. Furthermore, as by section 2(h) credit is given to the bank for taxes paid on accounts subsequently found worthless and the bank is in a position to require payment of box rentals and taxes in advance, there is no occasion for a bank ever to have saddled upon it any part of the tax burden.
"* * *
"The person liable for the tax, primarily, cannot always be said to be the real taxpayer. The taxpayer is the person ultimately liable for the tax itself. The funds which were received by the State came from the assets of the user, not from those of the federal instrumentality, the bank. * * *"
It is apparent from the foregoing quoted language that as between the State of Colorado and the bank, the legal incidence of the tax was on the bank. The bank was required to collect it from the user, and thus, the user became indebted to the bank *70 for the amount of the tax. Since the bank could collect from the user in advance, there was no occasion for the bank to ever be saddled with any part of the burden. The user, who was ultimately liable for the tax, was the taxpayer, and not the bank.
In the case now before us, the gross receipts tax "* * * is imposed on any person engaging in business in New Mexico." Section 72-16A-4, N.M.S.A. 1953 (Repl.Vol. 10, pt. 2, Supp. 1967). As between the State of New Mexico and the Bank, the legal incidence of the tax is on the Bank. The Bank is not required to collect the tax from the four other banks it services, but it may properly do so [§ 72-16A-6, N.M.S.A. 1953 (Repl.Vol. 10, pt. 2, Supp. 1967)], and, as a fact, it has done so and has entered into a contract whereby the tax is made a debt of the users of the service to the Bank. There is no occasion for the Bank to ever be saddled with any portion of the tax burden. The funds with which the tax has been paid came from the four using banks, not from the Bank. Thus, the four users are in fact the taxpayers. Also, we might add that, although there is no obligation under our statute for the person responsible for the tax to pass it on to the buyer or lessee, it is a common practice in New Mexico to so pass it on.
Our conclusions from what has been said are:
(1) The services here involved are not reasonably necessary or incident to the business or functions of a national bank, and, therefore, are not immune from taxation under the provisions of 12 U.S.C. § 548 (1964).
(2) In any event, the Bank is not the "real taxpayer."
The decision of the Commissioner should be affirmed.
It is so ordered.
WOOD, J., concurs.
SPIESS, C.J., dissents.
SPIESS, Chief Judge (dissenting).
It is axiomatic that a state has no power to impose a tax upon a national bank except as is permitted by Congressional action. First Agricultural National Bank of Berkshire County v. State Tax Commission, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968); Union Bank & Trust Company v. Phelps, 288 U.S. 181, 53 S.Ct. 321, 77 L.Ed. 687, 83 A.L.R. 1438 (1933); Iowa-Des Moines National Bank v. Bennett, 284 U.S. 239, 52 S.Ct. 133, 76 L.Ed. 265 (1931); First National Bank of Hartford, Wis. v. City of Hartford, 273 U.S. 548, 47 S.Ct. 462, 71 L.Ed. 767, 59 A.L.R. 1 (1927); Des Moines National Bank v. Fairweather, 263 U.S. 103, 44 S.Ct. 23, 68 L.Ed. 191 (1923); First National Bank of Gulfport, Miss. v. Adams, 258 U.S. 362, 42 S.Ct. 323, 66 L.Ed. 661 (1922); Owensboro National Bank v. City of Owensboro, 173 U.S. 664, 19 S.Ct. 537, 43 L.Ed. 850 (1899).
The Act of Congress, 12 U.S.C.A. § 548, furnishes the exclusive basis for the imposition of a tax by a state upon a national bank. First Agricultural National Bank of Berkshire County v. State Tax Commission, supra; Iowa-Des Moines Nat. Bank v. Bennett, supra.
The majority affirm the tax levy involved upon the grounds (1) that the activity engaged in by the bank and forming the basis for the tax levy was outside its corporate powers, and (2) the contract under which the bank rendered services to which the tax related permits the bank to charge those it serves the amount of the tax imposed.
I doubt that the activity is actually outside the scope of the bank's corporate powers but, if so, such action on the bank's part furnishes no ground, in my opinion, for the state to usurp a taxing power which it does not possess.
The identity of the taxpayer is not changed because it engages in an ultra vires activity. The tax is still directed against the bank and payment is still required to be made from its property and assets.
*71 The majority seem to take the view that the Congressional Act is a limitation upon the power of the state to lay taxes upon a national bank and from this premise they reason that the Congress did not intend to limit the right of the state to tax services not incident to the bank's corporate powers. The difficulty with this reasoning, in my opinion, is simply that the Congressional Act is a grant of authority or permission to impose a tax and is not a limitation upon the right of the state to tax. In other words, the state has no right to tax a national bank except in the manner authorized by the Act. The Act clearly does not grant permission to the states to tax a national bank with respect to an activity which is ultra vires. To justify such levy the state should point to permissive language in Congressional legislation, which, of course, it is unable to do.
The contract under which the bank renders services to others provides, in substance, that those to whom the service is rendered will repay to the bank any tax on account of such service which it is lawfully required to pay. The liability accrues only if the tax is lawfully levied. The contract, therefore, does not permit avoidance of the issue of lawfulness of the levy as against the bank, nor is it justification for the state to impose the tax unless it is lawful so to do.
I respectfully dissent.